USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __08/07/2013__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X
                                            :

ANDR'E DIGGS,                             :
                                            :

                     Plaintiff,    :   11 Civ. 6382 (KPF)
                                            :

          -v.-                     :   <u>OPINION AND ORDER</u>
                                            :

LIEUTENANT ANTHONY VOLPE and LIEUTENANT :
JOHN BYRON,                           :
                                            :

                    Defendants.  :
                                            :
------------------------------------------X

KATHERINE POLK FAILLA, District Judge:

      Plaintiff Andr'e Diggs, a former inmate of the Rockland

County Correctional Facility ("RCCF"), brings this <u>pro se</u> action

pursuant to 42 U.S.C. § 1983.  In it, Plaintiff claims that his

constitutional rights were violated when, for an approximately

four-month period in 2011, he was unable to attend congregate

religious services due to his placement in disciplinary

confinement.

      Pending before the Court is an unopposed motion for summary

judgment filed by Defendants Anthony Volpe and John Byron.  For

the reasons set forth in the remainder of this Opinion, the

motion is GRANTED.

FACTUAL BACKGROUND

      The following facts are relevant to the issues presented by

this motion, and are either undisputed or taken in the light

most favorable to Diggs.  See generally Collick v. Hughes, 699
F.3d 211, 219 (2d Cir. 2012).[1]

## A.    The April 8, 2011 Incident

At all times relevant to this action, Diggs was
incarcerated at RCCF.  (Statement ¶ 1; Compl. at 2).[2]  Anthony
Volpe and John Byron were then, and are now, correctional
officers at RCCF.  (Volpe Aff. ¶¶ 1-2; Byron Aff. ¶¶ 1-2).[3]

---

[1]    Rule 56.1 of the Local Civil Rules of the United States District Courts
for the Southern and Eastern Districts of New York (the "Local Rules")
requires a party moving for summary judgment to submit a "separate,
short and concise statement, in numbered paragraphs, of the material
facts as to which the moving party contends there is no genuine issue
to be tried."  Local Rule 56.1(a).  The movant's asserted facts are
deemed to be admitted unless specifically controverted by the statement
served by the opposing party.  Local Rule 56.1(c).

Pro se litigants are "not excused from meeting the requirements of
Local Rule 56.1."  Wali v. One Source Co., 678 F. Supp. 2d 170, 178
(S.D.N.Y. 2009).  Plaintiff has failed to submit any response to
Defendants' Rule 56.1 Statement.  Nonetheless, the Court retains
discretion "to consider the substance of the plaintiff's arguments,"
even when that plaintiff fails to comply with Local Rule 56.1.  Id.
(citing Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 73 (2d Cir.
2001) ("[W]hile a court is not required to consider what the parties
fail to point out in their Local Rule 56.1 Statements, it may in its
discretion opt to conduct an assiduous review of the record even where
one of the parties has failed to file such a statement.") (internal
quotation marks omitted)); see also Hayes v. County of Sullivan, 853 F.
Supp. 2d 400, 406 n.1 (S.D.N.Y. 2012) ("In light of Plaintiff's pro se
status, the Court overlooks his failure to file a Local Rule 56.1
Statement and conducts its own independent review of the record.").
The Court has conducted an independent review of the record to
determine whether there are any disputed issues of material fact.

[2]    "Statement" refers to Defendants' Rule 56.1 Statement of Material Facts
on Motion for Summary Judgment (Dkt. #56); "Ex." refers to an exhibit
to the Declaration of Rebecca Baldwin Mantello (Dkt. #53).  Since
Plaintiff's Complaint, attached as Exhibit A to the Mantello
Declaration, was not paginated, references to page numbers are to the
page numbers designated by ECF.  (See Dkt. #2).

[3]    At the time the Complaint was filed, on August 30, 2011, Anthony
Volpe's rank was Lieutenant.  On May 26, 2012, he was promoted to the
rank of Captain.  (Volpe Aff. ¶ 2).  For convenience, he is referred to
in this Opinion as Lieutenant Volpe.

While housed at RCCF, Diggs, a practicing Muslim, attended congregate Friday Jumu'ah prayer services (the "Friday Prayer"). (Compl. at 3-6).  On April 8, 2011, Diggs attended a congregate Friday Prayer with several other inmates in the multi-purpose room of RCCF.  (Compl. at 4; Ex. C at 5).  While monitoring RCCF's video surveillance system, Corrections Officer Keith Price observed Diggs pass contraband to inmate Mia Kadah during the Friday Prayer.  (Statement ¶ 2; Ex. C at 5; Ex. F at 12:37, 12:40, 12:44, 13:00, 13:34, 13:35).[4]  Specifically, Officer Price observed Diggs leave an object on a desk; Kadah later picked up the object and took it to the bathroom adjoining the multi-purpose room.  When Kadah returned, she handed an object to Diggs, who concealed it on his person and took it with him to the bathroom.  Diggs emerged from the bathroom a short time later, buttoning his jumpsuit.  (Ex. C at 5-6; Ex. F at 12:37, 12:40, 12:44, 13:00, 13:34, 13:35).

Officer Price notified Sergeant Loni Mirakaj that Diggs had exchanged contraband with Kadah.  (Ex. C at 5).  At the completion of the Friday Prayer, Sergeant Mirakaj and another corrections officer, Sergeant James Behrens, directed Diggs to the intake area of RCCF to be strip-searched.  (Statement ¶ 6; Mirakaj Aff. ¶ 4; Behrens Aff. ¶ 4; Compl. at 3-4; Ex. C at 3-

---

[4]    Exhibit F to the Mantello Declaration is a video recording of events taking place in the RCCF multi-purpose room over several hours on April 8, 2011.  References to that exhibit in this Opinion pertain to the time stamps on the recording.

4).  The intake area contains individual shower stalls where inmates are routinely searched.  (Mirakaj Aff. ¶ 5; Behrens Aff. ¶ 5).  On their way to the intake area, Diggs voluntarily turned over the item he exchanged with Kadah — a letter — to the Sergeants.  (Mirakaj Aff. ¶ 4; Compl. at 4; Ex. C at 3-4).

When they arrived at the intake area, Corrections Officer Mike McNichols was completing a search of two inmates in the shower stall area; accordingly, the Sergeants directed Diggs to wait in the intake area until they were ready to search him.  (Compl. at 3-4; Mirakaj Aff. ¶ 5; Behrens Aff. ¶ 5).  Diggs disregarded that directive and stripped off his clothing until he was naked.  (Mirakaj Aff. ¶ 5; Behrens Aff. ¶ 5).  Sergeant Mirakaj then directed Diggs to a vacant shower stall and undertook a search of Diggs and his clothes.  (Mirakaj Aff. ¶ 6; Behrens Aff. ¶ 6).  At the conclusion of the search, Sergeant Mirakaj gave Diggs back his clothes.  (Compl. at 3-4).

While Diggs was dressing, Sergeant Behrens used his foot to push Diggs's shoes over to him in the shower stall.  (Mirakaj Aff. ¶ 7; Behrens Aff. ¶ 7).  Sergeant Mirakaj then observed a small glassine baggie containing a green leafy substance fall out of Diggs's left shoe.  (Statement ¶ 8; Mirakaj Aff. ¶ 7; Behrens Aff. ¶ 7; Ex. C at 3-4).  Sergeant Mirakaj picked up the baggie and handed it to Sergeant Behrens, who placed it in an evidence bag for safekeeping.  (Statement ¶ 9; Mirakaj Aff.

¶¶ 7-8; Behrens Aff. ¶¶ 7-8; Ex. C at 3; Ex. H at 1, 4-5).  Upon

seeing the baggie, Diggs denied that it was his.  (Compl. at 4;

Ex. C at 3).  The officers then escorted Diggs back to his cell.

(Id.).

**B.    The Criminal Charges Against Diggs Relating to the
       April 8, 2011 Incident**

On the afternoon of April 8, 2011, RCCF officials notified

the Rockland County Sheriff's Police Division (also known as the

Rockland County Police Department, or the "RCPD") of the

incident.  (Ex. H at 1).  RCPD Officer Todd Farmer responded to

RCCF, interviewed prison personnel, and retrieved the evidence

bag containing the glassine baggie.  (Statement ¶ 9; Mirakaj

Aff. ¶ 8; Behrens Aff. ¶ 8; Ex. C at 3; Ex. H at 1, 4-5).  The

green leafy substance inside the baggie field-tested positive

for marijuana.  (Ex. H at 1).

On April 10, 2011, Diggs was arrested and processed by the

RCPD, and appearance tickets were issued requiring his

appearance in the Justice Court of the Town of Clarkstown.

(Ex. H at 2-3, 6-9, 13).  A misdemeanor information was also

filed in that court, charging Diggs with promoting prison

contraband in the second degree, in violation of New York Penal

Law Section 205.20, and unlawful possession of marijuana, in

violation of New York Penal Law Section 221.05.  (Ex. H at 12-

13).

**C. The Disciplinary Action Against Diggs Relating to the April 8, 2011 Incident**

**1. RCCF Inmate Rules**

RCCF has adopted policies and rules pursuant to Title 9 of the New York Code, Rules and Regulations § 7000, that include the Inmate Rules and Regulations (the "Inmate Rules"). (Statement ¶ 3; Ex. E). The Inmate Rules expressly prohibit inmates from making and passing contraband. (Statement ¶ 3; Ex. E at 14, Section CB10). While RCCF permits inmates to send and receive letters by means of an authorized, outside carrier, any item passed between or among inmates — including letters — is considered contraband. (Statement ¶ 5; Ex. E at 12, 14). Diggs's receipt of a letter from Kadah was a violation of Section CB10 of the Inmate Rules and Regulations, and, further, was a Class D infraction punishable by up to 30 days of disciplinary lock-in and loss of privileges, including congregate religious services. (Statement ¶ 5; Ex. E at 12, 14).

The Inmate Rules also prohibit inmates from possessing drugs other than medication; such possession is a Class B infraction punishable by up to 90 days in disciplinary lock-in and loss of privileges, including congregate religious services. (Statement ¶ 5; Ex. E at 12, 14, Section CB08). Thus, Diggs's possession of marijuana was both a violation of these rules and a separate criminal offense. (Id.).

2.    **The Disciplinary Proceedings**

Upon completion of the search on April 8, 2011, Diggs was placed in administrative lock-in pending a disciplinary hearing. (Statement ¶ 11; Compl. at 24; Ex. C at 2-6, 10).  That same day, Officer Behrens filed an infraction report, charging Diggs with two violations of the Inmate Rules: (i) Section CB 08 (possession of drugs other than medication including paraphernalia); and (ii) Section CB 10 (possessing, making, or passing contraband).  (Statement ¶ 12; Compl. at 23; Ex. C at 7; Behrens Aff. ¶ 9).  Diggs was offered a plea of 90 days disciplinary lock-in in lieu of a hearing, but he declined the offer and pled not guilty.  (Statement ¶ 13; Compl. at 5; Ex. C at 7; Behrens Aff. ¶ 10).

At an April 11, 2011 disciplinary hearing before a civilian hearing board, Sergeant Behrens testified on behalf of RCCF and Diggs testified on his own behalf.  (Statement ¶ 16; Compl. at 5; Volpe Aff. ¶ 14; Behrens Aff. ¶ 13).  Sergeant Behrens, Sergeant Mirakaj, Officer Price, and Officer Makara also filed incident reports that were reviewed by the board.  (Statement ¶ 11; Ex. C at 2-6, 10).  The civilian hearing board found Diggs guilty of both violations, and recommended the following sanctions: (i) disciplinary lock-in with segregated religious services for 120 days; (ii) keep-away from inmate Kadah for 120

days; and (iii) loss of commissary privileges for 60 days. (Statement ¶¶ 17, 18; Compl. at 23; Ex. C at 9).

Lieutenant Volpe was the RCCF shift lieutenant on duty on April 11, 2011, and he reviewed the reports and testimony, as well as the determination and recommendations of the civilian review board.  (Statement ¶ 19; Volpe Aff. ¶ 17; Compl. at 23). After concluding that the civilian review board's sanctions were consistent with the Inmate Rules, Lieutenant Volpe authorized the recommended sanctions.  (Statement ¶¶ 20-21; Volpe Aff. ¶¶ 17-19; Compl. at 23; Ex. C at 11-12; Ex. E at 11-12).  Though he had the opportunity to do so, Diggs did not appeal the civilian hearing board's determination or Lieutenant Volpe's authorization of sanctions.  (Statement ¶ 22; Volpe Aff. ¶¶ 19-20; Ex. C at 13).

**3.  Diggs's Period of Disciplinary Lock-In**

As a result of his disciplinary lock-in, Diggs was not permitted to attend congregate Friday Prayer from April 8, 2011, to August 7, 2011.  (Statement ¶ 23; Volpe Aff. ¶ 21; Compl. at 2-5, 16-20, 24-25; Ex. C at 11-12).  Diggs was eligible to receive – and did receive – private religious services from the volunteer imam during the disciplinary lock-in.  (Statement ¶ 24; Volpe Aff. ¶ 22; Compl. at 18-19; Ex. D at 2, 5).  Diggs was not prohibited or prevented from praying or otherwise

practicing his religion during the period of disciplinary lock-in.  (Statement ¶ 25; Volpe Aff. ¶ 23).

**D.   Diggs's Grievance Proceedings**

On June 9, 2011, Diggs filed an informal grievance requesting permission to attend congregate Friday Prayer. (Statement ¶ 26; Byron Aff. ¶ 4; Ex. D at 1).  The grievance was not resolved, but rather was submitted to RCCF's grievance coordinator.  (Statement ¶ 27; Byron Aff. ¶ 4; Ex. D at 1).

On June 18, 2011, Diggs filed a formal grievance, requesting permission to attend congregate Friday Prayer. (Statement ¶ 30; Byron Aff. ¶ 5; Ex. D at 2).  Sergeant Karl Mueller, the Grievance Coordinator, investigated Diggs's grievances; his investigation included interviewing Diggs about the substance of his grievance.  (Statement ¶ 31; Byron Aff. ¶ 5; Compl. at 19; Ex. D at 2, 5).  Ultimately, Sergeant Mueller denied Diggs's request for permission to attend congregate religious services, finding that: (i) Diggs had been placed on disciplinary lock-in and segregated religious services following a hearing for passing contraband during congregate religious services; (ii) during lock-in, Diggs "receive[d] segregated worship and [was] seen privately by the imam"; and (iii) Diggs was a "threat to the safety and security and good order of the facility" as outlined in the New York State Commission of

Corrections Minimum Standards. (Statement ¶ 32; Byron Aff. ¶ 6; Compl. at 19; Ex. D at 2, 5). <u>See</u> 9 NYCRR § 7024.1(b).

Diggs appealed the decision to RCCF's Chief Administrative Officer. (Statement ¶ 33; Byron Aff. ¶ 7). Lieutenant John Byron, acting as Chief Administrative Officer, upheld the denial on June 24, 2011, after reviewing the documents related to the April 8, 2011 incident. (Statement ¶ 34; Byron Aff. ¶ 7; Ex. D at 5-6). Diggs then appealed that decision to the Citizen's Policy and Complaint Review Council of New York State's Commission of Correction, which voted on August 16, 2011, to deny the grievance and to sustain the actions taken by RCCF's prison administration. (Statement ¶ 36; Byron Aff. ¶ 8; Ex. D at 7).

**E.   Diggs's 2012 Guilty Plea in Rockland County**

On April 1, 2011, in connection with an unrelated matter, Diggs was indicted for grand larceny in the third degree, in violation of New York Penal Law Section 221.05, by a grand jury sitting in Rockland County. (Statement ¶ 38; Dellicarri Aff. ¶ 3). On February 16, 2012, Diggs pled guilty to the lesser offense of grand larceny in the fourth degree, in violation of New York Penal Law Section 155.30. (Statement ¶ 39; Dellicarri Aff. ¶ 4).

According to the Rockland County prosecutor handling the grand larceny case, Diggs's plea bargain also encompassed the

charges contained in the misdemeanor information that had been filed in Clarkstown on April 10, 2011.  (Statement ¶ 40; Dellicarri Aff. ¶¶ 5, 7).  Moreover, as part of the plea bargain, Diggs voluntarily waived his right to appeal. (Statement ¶ 41; Dellicarri Aff. ¶ 6).

## F.    The Instant Litigation

Diggs filed this action pursuant to 42 U.S.C. § 1983 on August 30, 2011, raising claims under the First, Eighth, and Fourteenth Amendments to the Constitution.  (Dkt. #2).  On January 18, 2012, Defendants Mirakaj, Behrens, Volpe, and Byron moved to dismiss the Complaint.  (Dkt. #15).  On March 20, 2012, the Court granted the motion with respect to all claims against Defendants Mirakaj and Behrens, but denied the motion with respect to the First Amendment claims against Defendants Volpe and Byron.  (Dkt. #27).

On April 25, 2013, Defendants Volpe and Byron filed the instant motion for summary judgment.  (Dkt. #52).  Diggs's deadline to file an opposition to this motion was May 23, 2013. (Dkt. #51, 63, 64).  After Diggs failed to file an opposition, the Court, sua sponte, granted an extension of Diggs's deadline to July 1, 2013, but explicitly warned Diggs that if he did not respond, the motion would be treated as unopposed.  (Dkt. #64). On June 20, 2013, the Court again notified Diggs that failure to file an opposition would cause the motion to be decided

unopposed. (Dkt. #66). To date, Diggs has not filed an opposition.

## DISCUSSION

**A.   The Standard of Review**

**    1.   Summary Judgment Generally**

Under Fed. R. Civ. P. 56(a), summary judgment may be granted only if all the submissions taken together "show[] that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; see also Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005) (citing Anderson). The movant may discharge this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322; see also Selevan v. N.Y. Thruway Auth., 711 F.3d 253, 256 (2d

Cir. 2013) (finding summary judgment appropriate where the non-moving party fails to "come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on an essential element of a claim" (internal quotation marks omitted)).

If the moving party meets this burden, the nonmoving party must "set out specific facts showing a genuine issue for trial" using affidavits or otherwise, and cannot rely on the "mere allegations or denials" contained in the pleadings.  Anderson, 477 U.S. at 248, 250; see also Celotex, 477 U.S. at 323-24; Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts", Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (internal quotation marks omitted), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986) (quoting Quarles v. General Motors Corp., 758 F.2d 839, 840 (2d Cir.1985)). Furthermore, "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist."  Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (quoting Fletcher v. Atex, Inc., 68 F.3d 1451, 1456

(2d Cir. 1995) (internal quotation marks and citations
omitted)).

   2.   **Summary Judgment in <u>Pro Se</u> Cases**

   When considering a motion for summary judgment, the Court
must "construe all evidence in the light most favorable to the
nonmoving party, drawing all inferences and resolving all
ambiguities in its favor." <u>Dickerson v. Napolitano</u>, 604 F.3d
732, 740 (2d Cir. 2010) (citing <u>LaSalle Bank Nat'l Ass'n v.
Nomura Asset Capital Corp.</u>, 424 F.3d 195, 205 (2d Cir. 2005)).
In a <u>pro se</u> case, the Court must go one step further and
liberally construe the party's pleadings "to raise the strongest
arguments that they suggest." <u>McPherson v. Coombe</u>, 174 F.3d
276, 280 (2d Cir. 1999) (quoting <u>Burgos v. Hopkins</u>, 14 F.3d 787,
790 (2d Cir. 1994)).

   Nonetheless, a <u>pro se</u> litigant must still be held to the
normal requirements of summary judgment, and "bald
assertion[s]," unsupported by evidence, will not overcome a
motion for summary judgment. <u>See Carey v. Crescenzi</u>, 923 F.2d
18, 21 (2d Cir. 1991); <u>Stinson v. Sheriff's Department</u>, 499 F.
Supp. 259, 262 (S.D.N.Y. 1980) (holding that the liberal
standard accorded to <u>pro se</u> pleadings "is not without limits,
and all normal rules of pleading are not absolutely suspended").
Litigants "should be on notice from the very publication of Rule
56(e) that a party faced with a summary judgment motion may not

rest upon the mere allegations or denials of the party's pleading and that if the party does not respond properly, summary judgment, if appropriate, shall be entered against him." Champion v. Artuz, 76 F.3d 483, 485 (2d Cir. 1996) (quoting Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988)).

### 3.   Summary Judgment Motions That Are Not Opposed

Diggs's failure to respond to Defendants' summary judgment motion does not require the Court to grant the motion.  Rather, an unopposed summary judgment motion in a pro se action may only be granted if: (i) the pro se litigant has received adequate notice that failure to file any opposition may result in the entry of summary judgment without trial, and (ii) the court is satisfied that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Champion, 76 F.3d at 485 (noting that an "easily comprehensible notice from the party moving for summary judgment would suffice.").

The Court is satisfied that Defendants' April 25, 2013 Notice to Pro Se Litigant gave more than adequate notice to Diggs that failure to file an opposition could result in the dismissal of his claim without trial.  (Dkt. #55).  The Notice included the full text of Fed. R. Civ. P. 56 and Local Rule 56.1, and stated in relevant part:

> The defendants in this case have moved for
> summary judgment pursuant to Rule 56 of the Federal

Rules of Civil Procedure. This means that the
defendants have asked the Court to decide this case
without a trial, based on written materials, including
affidavits, submitted in support of the motion. THE
CLAIMS YOU ASSERT IN YOUR COMPLAINT MAY BE DISMISSED
WITHOUT A TRIAL IF YOU DO NOT RESPOND TO THIS MOTION
ON TIME by filing sworn affidavits and/or other
documents as required by Rule 56(c) of the Federal
Rules of Civil Procedure and by Local Civil Rule 56.1.
The full text of Rule 56 of the Federal Rules of Civil
Procedure and Local Civil Rule 56.1 is attached.

In short, Rule 56 provides that you may NOT
oppose summary judgment simply by relying upon the
allegations in your complaint. Rather, you must submit
evidence, such as witness statements or documents,
countering the facts asserted by the defendant and
raising specific facts that support your claim.

(Id.).

Although a plaintiff's failure to respond may allow a

district court to accept the movant's factual assertions as true

under Local Rule 56.2, the moving party must still establish

that the undisputed facts entitle him to "a judgment as a matter

of law." See Champion, 76 F.3d at 486.  Accordingly, "in

considering a motion for summary judgment, [the court] must

review the motion, even if unopposed, and determine from what it

has before it whether the moving party is entitled to summary

judgment as a matter of law." Vermont Teddy Bear Co., Inc. v.

1-800 Beargram Co., 373 F.3d 241, 246 (2d Cir. 2004) (quoting

Custer v. Pan Am. Life Ins. Co., 12 F.3d 410, 416 (4th Cir.

1993)).

**B.    Analysis**

**1.    There Is No Disputed Issue of Material Fact**

Before the Court evaluates Defendants' substantive claims, it is first necessary to review the underlying facts to ensure that no disputed issue of material fact exists.  See Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987) (holding that courts should not resolve contested issues of fact, but must instead determine whether disputed issues of material fact exist).  The most significant factual discrepancy between the allegations in Plaintiff's Complaint and the various materials submitted in support of Defendants' summary judgment motion concerns whether Diggs in fact possessed marijuana on April 8, 2011.  (Compare Compl. at 5-7 with Statement ¶ 8; Mirakaj Aff. ¶ 7; Behrens Aff. ¶ 7; Ex. C at 3-4; Ex. H at 1, 4-5, 9).  Though Diggs was found to have possessed marijuana by an RCCF civilian hearing board, the Court nonetheless examines the record to determine whether there is an issue of material fact that would render summary judgment improper in this case.

Diggs denies that he was in possession of marijuana at the April 8, 2011 Friday Prayer, alleging that "Sgt. Behrens reached over Sgt. [Mirakaj's] shoulder and put some kind of object in his hand," and that when Diggs saw the marijuana, he told Sergeant Mirakaj, "that is not mine."  (Compl. at 4).  Diggs further contends that he was "wrongfully found guilt[y]" at the

17

April 11, 2011 disciplinary hearing.  (Id. at 5).  Notably, however, Diggs has offered no explanations for whose marijuana it was, or how it came to be in his shoe.  (Compl. at 3-5).[5] While Diggs notes in his Complaint that there were two other inmates in the shower area where the search was conducted — a fact not disputed by Defendants — Diggs has never suggested that the marijuana belonged to those other inmates or anyone else. (See Compl. at 3; Mirakaj ¶ 5; Behrens ¶ 5).

By contrast, Defendants have offered substantial proof that Diggs possessed the marijuana found on April 8, 2011.  According to the sworn affidavits of two officers, a baggie containing marijuana was concealed in Diggs's left shoe and was discovered only when Sergeant Behrens tipped the shoe over towards the shower area where Diggs was dressing.  (Statement ¶ 8; Mirakaj Aff. ¶ 7; Behrens Aff. ¶ 7; Ex. C at 3-4).  Defendants have offered a copy of the chain of custody for the baggie found in

---

[5]     Diggs unsuccessfully tried to obtain video recordings of the search area, but the tapes were no longer in Defendants' custody or control. (Dkt. #44, 45).  In an April 15, 2013 Order, the Court found that Defendants had satisfied their discovery obligations and closed discovery.  (Dkt. #51).

In a March 19, 2013 letter to the Court, Diggs appeared to question that marijuana was even found, writing "[i]t is the plaintiff's position that he did not have in his possession any contraband and the cameras for the area would support that the defendants had not recovered any marijuana from him."  (Dkt. #44).  In an April 6, 2013 letter to the Court, Diggs again alleged that "had any contraband been found, the camera would have recovered it."  (Dkt. #50).  For the reasons stated in this Opinion, the Court credits the sworn affidavits from Sergeants Mirakaj and Behrens and the other evidence submitted by Defendants, and accepts their uncontested Local Rule 56.1 statement as true.

Diggs's shoe, as well as an RCPD report stating that the substance field-tested positive for marijuana.  (Ex. H at 4-5).[6] Plaintiff's unsupported, _ipse_ _dixit_ assertions that the marijuana "is not mine" (Compl. at 4) are plainly inadequate to create a disputed issue of material fact for summary judgment purposes, particularly where Plaintiff has failed to take advantage of numerous opportunities to oppose the instant motion.  See Carey, 923 F.2d at 21 (holding that "defendants' bald assertion, completely unsupported by evidence, did not satisfy their burden and did not "present[ ] a sufficient disagreement to require submission to a jury," as required by Fed. R. Civ. P. 56(c)).  The Court accepts Defendants' uncontested Local Rule 56.1 Statement as true.  See Vermont Teddy Bear Co., Inc., 373 F.3d at 246; Local Rule 56.1(c).[7]

---

[6]     Defendants have supported their Local Rule 56.1 Statement with sworn affidavits and records from the RCPD and RCCF.  Defendants have sworn that both the RCCF and RCPD records are "made and kept in the ordinary course of business, pursuant to the usual practice of the business." (See Ex. G, I).

[7]     Alternatively, Defendants argue that Diggs is collaterally estopped from relitigating the issue of whether he possessed marijuana because Diggs was found guilty of the offense by a civilian hearing board and pled guilty to the offense in Rockland County Court.  (Def. Br. 14-18 (citing, inter alia, Allen v. McCurry, 449 U.S. 90, 103-04 (1980))).  As to the former, the Court is mindful of the Second Circuit's admonition that "there is a substantial question as to whether, under New York law, collateral estoppel should ever apply to fact issues determined in a prison disciplinary hearing and reviewed for substantial evidence in an Article 78 proceeding, given the procedural laxity of such prison hearings." Colon v. Coughlin, 58 F.3d 865, 869-70 (2d Cir. 1995) (internal quotation marks omitted) (quoting Young v. Selsky, 41 F.3d 47, 53 (2d Cir. 1994)).  Here, Defendants have not alleged that Diggs took advantage of his right to consult counsel or to present evidence in defense of the charges.  The mere fact that Diggs could have, but did not, bring an Article 78 proceeding, does not allow

2.    **Summary Judgment as to Plaintiff's First Amendment
      Claim Is Appropriate as a Matter of Law**

The Court next considers the legal merits of Plaintiff's
substantive claim.  Diggs alleges that his First Amendment
rights were violated when he was prevented from attending
congregate Friday Prayer during the period of his disciplinary
lock-in.  (<u>See generally</u> Statement ¶ 23; Volpe Aff. ¶ 21; Compl.
at 3-5; Ex. C at 11-12).  They were not.  During this period,
Diggs was eligible for and did receive private religious
services from the volunteer imam.  (Statement ¶ 24; Volpe Aff.
¶ 22; Compl. at 18-19; Ex. D at 2, 5).  Diggs was likewise not
prohibited or prevented from otherwise practicing his religion
during this time.  (Statement ¶ 25; Volpe Aff. ¶ 23).  Most
importantly, the undisputed burden on Diggs's ability to

---

the Court to find as a matter of law that the issue of Diggs's
possession of marijuana was "fully and fairly" adjudicated.

The record before the Court is similarly inadequate to support a
conclusion that Diggs's February 2012 guilty plea merits preclusive
effect.  Defendants have submitted an affirmation from Supervising
Assistant District Attorney Anthony R. Dellicarri, in which Dellicarri
states that when Diggs pled guilty to the unrelated charge of grand
larceny in the fourth degree, the "plea bargain [with Diggs] covered
the charges filed in the Justice Court of the Town of Clarkstown."
(Dellicarri Aff. ¶ 5).  Nowhere does Dellicarri state, however, that
Diggs in fact pled to either criminal charge stemming from the April 8,
2011 incident — indeed, he states only that Diggs pled to the grand
larceny charge.  Nor have Defendants submitted the relevant plea
allocution or any documentation confirming that Diggs in fact pled to
the marijuana charge, and that the plea was knowing and voluntary.  As
such, the Court is not able to determine whether the possession issue
was actually adjudicated, and if Diggs's guilty plea "fully and fairly"
adjudicated the issue.  <u>See</u> <u>Searles v. Dalton</u>, 299 A.D.2d 788, 789, 751
N.Y.S.2d 84 (3d Dep't 2002) (defendant was not estopped from litigating
a criminal conviction where the "sparse" record only contained a
certificate of disposition that omitted any details of the plea, and
did not include a copy of the plea allocution).

practice his religion during this four-month period was clearly
outweighed by RCCF's legitimate penological interest in
maintaining order in its facility — an interest that Diggs had
contravened by possessing and passing contraband at a previous
Friday Prayer service.

### i. Evaluating Free Exercise Claims Under Section 1983

Section 1983 establishes liability for deprivation, under
the color of state law, "of any rights, privileges, or
immunities secured by the Constitution."  42 U.S.C. § 1983.  It
is well established that prisoners have a constitutional right,
grounded in the Free Exercise Clause of the First Amendment, to
participate in congregate religious services, and disciplinary
confinement does not deprive prisoners of that right.
Salahuddin v. Coughlin, 993 F.2d 306, 308 (2d Cir. 1993) (citing
Young v. Coughlin, 866 F.2d 567, 570 (2d Cir. 1989)).

However, a prisoner's right to practice his religion is not
absolute, since "[l]awful incarceration brings about the
necessary withdrawal or limitation of many privileges and
rights, a retraction justified by the considerations underlying
our penal system."  O'Lone v. Estate of Shabazz, 482 U.S. 342,
348 (1987) (quoting Price v. Johnston, 334 U.S. 266, 285
(1948)); accord Turner v. Safley, 482 U.S. 78, 84 (1987).  Under
the First Amendment, prison regulations are judged under a less
restrictive "reasonableness" standard that requires the

regulation to be "reasonably related to legitimate penological interests." O'Lone, 482 U.S. at 349 (quoting Turner, 482 U.S. at 89).

As a threshold matter, the prisoner must show that the disputed conduct substantially burdens his sincerely held religious beliefs. Ford v. McGinnis, 352 F.3d 582, 591 (2d Cir. 2003). The defendant then bears the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct. Id. at 594-95. If the defendant meets this requirement, the burden then shifts back to the prisoner to show that the articulated concerns were "irrational." Id. at 595. (quoting Fromer v. Scully, 874 F.2d 69, 74 (2d Cir. 1989)); see also Jones v. N.C. Prisoners' Labor Union, Inc., 433 U.S. 119, 127-28 (1977) (holding that prison officials need only testify to the legitimate penological interests behind the challenged conduct to meet their burden of proof).

### ii. Diggs Has Demonstrated a Burden on His Religious Beliefs

Diggs has alleged, and Defendants do not dispute, that he is a practicing Muslim with sincerely-held religious beliefs that were substantially burdened by his period of disciplinary confinement. (Compl. at 5, 8-11; Def. Br. 12). Therefore, Diggs has satisfied the first prong of his First Amendment Free Exercise claim.

### iii. Defendants Have Demonstrated a Legitimate Penological Interest in Diggs's Administrative Lock-In

Significantly, however, Defendants have presented abundant evidence of a legitimate penological interest in the disciplinary sanctions imposed on Plaintiff after the April 8, 2011 incident in which correctional officers recovered two different types of contraband, both of which violated the Inmate Rules and one of which separately violated New York's Penal Law. Plaintiff has not attempted to show that RCCF's concerns were irrational, and, on this record, he could not.

Courts evaluate four factors in determining whether a prison regulation is reasonable: (i) whether the challenged regulation or official action has a valid, rational connection to a legitimate governmental objective; (ii) whether prisoners have alternative means of exercising the burdened right; (iii) the impact on guards, inmates, and prison resources of accommodating the right; and (iv) the existence of alternative means of facilitating exercise of the right that have only a de minimis adverse effect on valid penological interests. Turner, 482 U.S. at 89-91. The first Turner "factor" is an essential requirement. See O'Lone, 482 U.S. at 350 ("[A] regulation must have a logical connection to legitimate governmental interests invoked to justify it.").

A review of these factors confirms both the existence of a legitimate penological interest and the limited nature of the infringement of Plaintiff's free exercise rights.  First, prisons are given wide leeway to implement their own regulations for the safety and security of their employees and inmates. See generally Jones, 433 U.S. at 128.  Here, Lieutenants Volpe and Byron submitted sworn affidavits stating that:

> RCCF has a legitimate penological interest in limiting plaintiff's attendance at congregate religious servicing during a period of disciplinary lock-in in order to maintain the safety, security and good order of the facility in accordance with 9 NYCRR 7024.1, including the prevention of passing contraband between inmates during congregate religious services.

(Volpe Aff. ¶ 24; Byron Aff. ¶ 9).  Defendants have thus identified a legitimate penological interest — maintaining a safe and secure prison in which contraband is not passed between inmates — to justify Diggs's disciplinary confinement for possessing and passing contraband at the very religious service he sought here to attend.  See Pell v. Procunier, 417 U.S. 817, 826 (1974) (stating that "institutional consideration[s] of internal security within the corrections facilities" are "central to all other corrections goals"); see also Salahuddin v. Jones, 992 F.2d 447, 449 (2d Cir. 1993) (holding that defendants had a legitimate penological purpose for preventing an inmate from attending congregate religious services where the inmate was in disciplinary confinement for fighting with another

inmate); <u>Matiyn v. Henderson</u>, 841 F.2d 31, 37 (2d Cir. 1988) (finding that defendants had a legitimate penological purpose for preventing inmate from attending congregate religious services where two knives had been found in inmate's office in the chapel).

Second, Diggs had at least two alternative means of exercising his right to practice his religion.  Diggs was not prevented or discouraged from praying in his cell or otherwise practicing his religion.  (Statement ¶ 25; Volpe Aff. ¶ 23). Alternatively, Diggs could have — and did — receive private visits from a volunteer imam.  (Statement ¶ 24; Volpe Aff. ¶ 22; Compl. at 18-19; Ex. D at 2, 5).  <u>See</u> <u>O'Lone</u>, 482 U.S. at 351-52 (holding that it was reasonable to not allow attendance at Jumu'ah prayer services because respondents were free to participate in other religious observances of their faith, including access to an imam and the provision of special meals).

Third, "[w]hen accommodation of an asserted right will have a significant ripple effect on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials."  <u>Turner</u>, 482 U.S. at 90 (citing <u>Jones</u>, 433 U.S. at 132-33).  Here, allowing an inmate such as Diggs to attend a religious service after he was found guilty of passing contraband at that very service would plainly

frustrate the prison's ability to ensure the safety and security of the facility.

Fourth, as noted, Diggs had access to and utilized alternative means to exercise his right to engage in Friday Prayer.  (Statement ¶¶ 24, 25; Volpe Aff. ¶¶ 22, 23; Compl. at 18-19; Ex. D at 2, 5).  These alternative means had a _de minimis_ adverse effect on the penological interests Defendants sought to vindicate.

In sum, Defendants had a legitimate penological interest in limiting Plaintiff's attendance at congregate Friday Prayer during the period of his disciplinary confinement.  As Plaintiff has not alleged any facts showing that this interest was irrational, summary judgment as to Plaintiff's Free Exercise claim is warranted.[8]

---

[8]     Because the Court grants summary judgment as to Plaintiff's remaining claim, it need not decide whether Defendants are entitled to relief under the doctrine of qualified immunity.  (Def. Br. 18-21).  _See generally_ _Harlow v. Fitzgerald_, 457 U.S. 800, 815-19 (1982); _In re State Police Litig._, 88 F.3d 111, 123 (2d Cir. 1996) (qualified immunity analysis requires court to consider whether right found to be violated was "clearly established," and whether it was reasonable for the defendant to believe he was acting in a way that did not violate the clearly established right).  The Court notes, however, that both Defendants have submitted sworn affidavits in which they aver that they reasonably believed that they were not violating Plaintiff's constitutional rights, and Plaintiff has made no effort to dispute these statements.  (_See_ Volpe Aff. ¶ 25; Byron Aff. ¶ 10).

**CONCLUSION**

It is hereby ORDERED that Defendants' motion for summary judgment is GRANTED, and Diggs's remaining claims are DISMISSED as to Defendants Volpe and Byron.

The Clerk of Court is directed to terminate Docket Entry #52, and to mark the case as closed.

SO ORDERED.

Dated:     August 7, 2013
           New York, New York

_____
     KATHERINE POLK FAILLA
   United States District Judge